Mark HACKETT, Plaintiff

v.

**G.D. SEARLE & CO., Monsanto Co., Pharmacia Corp. and Pfizer Inc., Defendants**

No. 01–CV–399.

United States District Court, W.D. Texas, Austin Division.

Feb. 22, 2002.

Zoe Littlepage, Ravkind & Littlepage, P.C., Joshua Hadan Brockman, Chetna Gosain, Littlepage & Associates, P.C., Houston, TX, James R. Barnes, Michles & Booth, P.A., Pensacola, FL, for Plaintiff.

Mark Hackett, Austin, TX, Pro se.

M. Raymond Hatcher, Andrew E. Costa, Stephen E. Scheve, Shook, Hardy & Bacon, LLP, Jack Edward Urquhart, Joseph Samuel Cohen, Pamela A. Clark, Beirne, Maynard & Parsons, L.L.P., Houston, TX, for Defendants.

### ORDER

SPARKS, District Judge.

BE IT REMEMBERED that on the 22nd day of February 2002, the Court reviewed the file in the above-styled cause, specifically Defendant G.D. Searle's Motion for Partial Judgment on the Pleadings with Respect to Plaintiff's Negligence per se and Failure to Warn Claims [# 26]; Defendant G.D. Searle's Motion for Partial Summary Judgment with Respect To Plaintiff's Design Defect Claim [# 58]; and Defendant Pfizer's Motion for Partial Summary Judgment with Respect to Plaintiff's Claim of Design Defect [# 59]. The Court notes although these motions were all filed over a month ago, the Plaintiff has not responded. Under Local Rule CV-7(d), when a party does not respond within the deadline, the Court may grant the motions as unopposed. Nonetheless, because they are dispositive motions, the Court will evaluate them on their merits.[1]

### Background

This is a personal injury case involving the prescription drug Celebrex. The plaintiff, Mark Hackett, who resides in Texas, alleges he suffered injuries to his kidneys from ingesting Celebrex in 1999. *See* Amended Complaint, at ¶ 7–8. Defendant G.D. Searle L.L.C. ("Searle"), a Delaware corporation with its principal place of business in Skokie, Illinois, manufactured,

created, designed, and promoted the Celebrex Hackett ingested. *See id.* at ¶ 2; Searle's Answer, at ¶ 9. Defendant Monsanto Company ("Monsanto"), a Delaware corporation with its principal place of business in St. Louis, Missouri, distributed Celebrex for ultimate sale in Texas. *See* Monsanto's Answer, at ¶ 12. Defendant Pharmacia Corporation ("Pharmacia"), a Delaware corporation with its principal place of business in New Jersey, merged with Monsanto in March 2000. *See* Pharmacia's Answer, at ¶ 10. Pharmacia entered into agreements regarding Celebrex with Searle and Monsanto and distributed Celebrex for ultimate sale in Texas. *See id.*, at ¶ 11–12. Defendant Pfizer, Inc. ("Pfizer") is a Delaware corporation with its principal place of business in New York. *See* Amended Complaint, at ¶ 5. Pfizer marketed and advertised Celebrex as part of a co-promotion and marketing agreement. *See* Pfizer's Answer, at ¶ 11.

Hackett filed this lawsuit on June 25, 2001, alleging failure to warn of possible injuries resulting from Celebrex ingestion, breach of express and implied warranties, intentional and negligent misrepresentation and fraud, intentional infliction of emotional distress, and defective design. Searle moves for judgment on the pleadings on Hackett's failure to warn and negligence per se claims. Searle and Pfizer move for summary judgment on Hackett's design defect claim.

### Analysis

### I. Negligence Per Se and Failure to Warn

Searle moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal

---

1. The Court wishes to remind Plaintiff that this is the undersigned's second charitable act toward him within a matter of two weeks. On February 12, 2002, the Court signed an Order denying Defendants' motion to dismiss Plaintiff's negligent misrepresentation claims, even though Plaintiff named the wrong defendants in its original and amended complaints—a "typographical error." The Court advises Plaintiff's counsel to wake up and litigate this case, lest it disappear piecemeal before their heavy-lidded eyes.

Rules of Civil Procedure on Hackett's negligence per se and failure to warn claims. Under Rule 12(c), a party may move for judgment on the pleadings after the pleadings are closed but before trial. FED. R. CIV. P. 12(c). Judgment on the pleadings is appropriate where no material facts are at issue, but only questions of law. *See, e.g., Hebert Abstract Co. v. Touchstone Properties, Ltd.,* 914 F.2d 74, 76 (5th Cir. 1990).

 Hackett alleges Defendants were negligent per se because they violated the Food and Drug Cosmetic Act ("FDCA") and various Food and Drug Administration ("FDA") regulations by providing inaccurate information in their warnings, informational materials and package inserts. *See* Amended Complaint, at ¶ 33. Negligence per se is a tort theory whereby courts use statutes or regulations to define the standard of reasonably prudent conduct. *See Carter v. William Sommerville & Son, Inc.,* 584 S.W.2d 274, 278 (Tex. 1979). Courts are not required to find negligence per se from a violation of a federal statute, particularly where the violation would not give rise to liability under state common law. *See, e.g., Johnson v. Sawyer,* 47 F.3d 716, 728–29 (5th Cir.1995) (en banc). Because the FDCA does not provide for a private cause of action, many courts have held plaintiffs cannot seek to enforce it through negligence per se tort actions. *See Talley v. Danek Med., Inc.,* 179 F.3d 154, 161 (4th Cir.1999); *Alexander v. Smith & Nephew, P.L.C.,* 98 F.Supp.2d 1276, 1285 (N.D.Okla.2000); *Blinn v. Smith & Nephew Richards, Inc.,* 55 F.Supp.2d 1353, 1361 (N.D.Fla.1999).

Although the Fifth Circuit and the Texas Supreme Court have not ruled on this issue, one Texas court has held the FDCA and FDA regulations do not give rise to a negligence per se cause of action under the standard the Texas Supreme Court established in *Perry v. S.N.,* 973 S.W.2d 301, (Tex.1998). *See Baker v. Smith & Nephew Richards, Inc.,* 1999 WL 811334, at *8 (Tex. Dist. June 7, 1999), *aff'd on other grounds sub. nom., McMahon v. Smith & Nephew Richards, Inc.,* 2000 WL 991697 (Tex.App.-Houston [14th Dist.] July 20, 2000). The Court finds the *Baker* Court's application of the *Perry* factors persuasive and declines to create a new cause of action, particularly in a case where the Plaintiff has been so lackadaisical in pursuing his novel theory of liability. *Cf. Perry,* 973 S.W.2d at 306–07 ("[T]his Court in fact has created a new duty by applying negligence per se on only one occasion."); *Trevino v. Ortega,* 969 S.W.2d 950, 951 (Tex. 1998) ("This Court treads cautiously when deciding whether to recognize a new tort.").

 Searle also moves for judgment on the pleadings on Hackett's claims that it failed to warn users and consumers of Celebrex and physicians other than Hackett's physician. *See* Amended Complaint, ¶¶ 30, 37, 40. Under the learned intermediary doctrine, a drug manufacturer need not warn each patient of a product's potential danger as long as it properly warns the patient's prescribing physician, who is the "learned intermediary" between the patient and the manufacturer. *See Alm v. Aluminum Co. of Am.,* 717 S.W.2d 588, 591–92 (Tex.1986). The learned intermediary doctrine applies even to cases where manufacturers allegedly market directly to consumers, because the prescribing physician is still seen as playing a vital role. *See In re Norplant Contraceptive Products Liability Litigation,* 165 F.3d 374, 379 (5th Cir.1999). Therefore, Searle had no duty to warn anyone other than Hackett's prescribing doctor about the potential dangers of Celebrex, and Hackett's failure to warn claim is dismissed except as related to Hackett's prescribing physician.

## II. Design Defect

■ Searle and Pfizer move for summary judgment on Hackett's design defect claim because Celebrex and other prescription drugs are exempted from liability as "unavoidably unsafe" products. Summary judgment may be granted if the moving party shows there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). In deciding summary judgment, the Court construes all facts and inferences in the light most favorable to the nonmoving party—here, the plaintiff. *Hart v. O'Brien,* 127 F.3d 424, 435 (5th Cir.1997), *cert. denied,* 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999). The standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler,* 909 F.2d 834, 837 (5th Cir.1990).

Both parties bear burdens of producing evidence in the summary judgment process. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). First, "[t]he moving party must show that, if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof." *Hart,* 127 F.3d at 435. The nonmoving party must then "set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings." *Id.* However, "[n]either 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the non-movant's burden." *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996).

Under comment k to section 402A of the Restatement (Second) of Torts, an una-voidably unsafe product "properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous." RESTATEMENT (SECOND) OF TORTS § 402A cmt. k (1965). Texas courts apply comment k to product liability claims, and have applied it to prescription drug claims. *See, e.g., Reyes v. Wyeth Labs.,* 498 F.2d 1264, 1273–75 (5th Cir.1974) (holding polio vaccine, a prescription drug, to be an unavoidably unsafe product). Celebrex is a prescription drug the FDA approved for marketing in the United States in 1998. *See* Amended Complaint, at ¶ 15. Defendants do not present evidence that Celebrex in particular is an unavoidably unsafe drug; rather, they urge this Court to rule that all FDA-approved prescription drugs are unavoidably unsafe as a matter of law. Many courts have held FDA-approved prescription drugs unavoidably unsafe as a matter of law. *See, e.g., Grundberg v. Upjohn Co.,* 813 P.2d 89, 98–99 (Utah 1991); *Brown v. Superior Court,* 44 Cal.3d 1049, 245 Cal.Rptr. 412, 751 P.2d 470, 482–83 (1988); *Lindsay v. Ortho Pharm. Corp.,* 637 F.2d 87, 90–91 (2d Cir.1980). To allow plaintiffs to sue for defective design of prescription drugs would provide a disincentive to companies to develop new drugs and would allow juries to second-guess the FDA's approval of the drugs for marketing. The Court thus holds that under Texas law and comment k of the Restatement, Defendants can only be held strictly liable if the drug was not properly prepared or marketed or accompanied by proper warnings. *See* RESTATEMENT (SECOND) OF TORTS § 402A cmt. k (1965); *Reyes,* 498 F.2d at 1274–75.

Pfizer also moves for summary judgment on design defect on the basis that it did not develop Celebrex and did not sell it in the United States. As the record con-

tains no evidence to the contrary, the Court grants the motion on that basis.

In accordance with the foregoing:

IT IS ORDERED that Defendant Searle's Motion for Judgment on the Pleadings [# 26] is GRANTED, and Hackett's claims against Searle for negligence per se and failure to warn parties other than Hackett's prescribing physician are DISMISSED;

IT IS FURTHER ORDERED that Defendant Searle's Motion for Partial Summary Judgment with Respect to Plaintiff's Claim of Design Defect [# 58] is GRANTED;

IT IS FINALLY ORDERED that Defendant Pfizer's Motion for Partial Summary Judgment with Respect to Plaintiff's Claim of Design Defect [# 59] is GRANTED.