**Thomas W. McKAY and Leticia McKay, Plaintiffs,**

**v.**

**NOVARTIS PHARMACEUTICALS CORPORATION, Defendant.**

**No. EP–06–CA–63–FM.**

United States District Court, W.D. Texas, El Paso Division.

March 28, 2013.

Francisco X. Dominguez, Dominguez & Coyle, P.L.L.C., El Paso, TX, John J. Vecchione, John J. Vecchione Law, PLLC, Fairfax, VA, for Plaintiffs.

Joe G. Hollingsworth, Donald R. McMinn, Katharine R. Latimer, Robert E. Johnston, Hollingsworth, LLP, Washington, DC, Mark N. Osborn, Kemp Smith LLP, El Paso, TX, for Defendant.

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FRANK MONTALVO, District Judge.

On this day, the court considered Defendant Novartis Pharmaceuticals Corporation's ("Defendant" or "Novartis") "Novartis Pharmaceuticals Corporation's Motion for Summary Judgment and Briefing in Support" ("Motion") [ECF. No. 32], filed March 27, 2012; Plaintiffs' Thomas W. McKay and Leticia McKay's (collectively "Plaintiffs" or "McKays") "Plaintiffs' Response in Opposition to Defendant's Renewed Motion for Summary Judgment" ("Response") [ECF No. 38], filed April 27, 2012; and Defendant's "Novartis Pharmaceuticals Corporation's Reply in Support of Its' Motion for Summary Judgment" ("Reply") [ECF. No. 41], filed May 4, 2012. The court also reviewed "Plaintiffs' Summary of Facts Appendix Filed in Support of Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment" ("Summary of Facts Appendix") [ECF No. 39], filed on April 27, 2012; "Novartis Pharmaceuticals Corporation's Response to Plaintiffs' 'Summary of Facts Appendix'" ("Response to Summary of Facts Appendix") [ECF No. 42], filed on May 4, 2012; "Plaintiffs' Notice of Supplemental Authority" [ECF No. 44], filed June 11, 2012; Defendant's "Novartis Pharmaceuticals Corporation's Cross–Notice and Response to Plaintiffs' Notice of Supplemental Authority" [ECF No. 47], filed July 5, 2012; "Novartis Pharmaceuticals Corporation's Notice of Supplemental Authority" [ECF No. 50], filed October 22, 2012; "Plaintiffs' Response to Defendant's Notice of Supplemental Authority" [ECF No. 51], filed November 6, 2012; "Novartis Pharmaceuticals Corporation's Reply to Plaintiffs' Response to Notice of Supplemental Authority" [ECF No. 52], filed November 13, 2012; "Novartis Pharmaceuticals Corporation's Notice of Supplemental Authority" [ECF No. 58], filed March 14, 2013; and "Plaintiffs' Opposition to NPC's Supplemental Authority" [ECF No. 59], filed March 26, 2013.

Novartis requests the court to grant it judgment as a matter of law on all of Plaintiffs' claims. For the reasons set forth below, the court will grant Novartis' Motion.

## I. BACKGROUND

### A. Procedural History

The McKays brought suit against Novartis in this court on February 15, 2006, alleging that two of the Novartis' drugs—Aredia and Zometa—caused Thomas McKay osteonecrosis of the jaw ("ONJ"). The McKays brought claims for strict liability, negligence, breach of express warranty and breach of implied warranty. On May 24, 2006, this case was transferred to the Honorable Todd J. Campbell of the Middle District of Tennessee (the "MDL court") as a "tag-along" case to *In Re Aredia and Zometa Products Liability Litigation,* MDL No. 1760, and was individually styled therein as 3:06–cv–527. On December 22, 2006, the McKays filed an amended complaint, adding a failure to warn claim and a loss of consortium claim.[1] On July 25, 2008, Judge Campbell granted Novartis partial summary judgment, dismissing McKays' failure to warn claim.[2]

---

1. See "Amended Complaint and Jury Demand," *In re Aredia and Zometa Products Liability Litigation,* No. 3:06–md–1760, 2006 WL 4044995 (M.D.Tenn. Dec. 22, 2006), ECF No. 223.

2. See "Order," *Thomas W. McKay and Leticia McKay v. Novartis Pharmaceuticals Corp.,* No. 3:06–cv–527 (M.D.Tenn. Jul. 25, 2008), ECF No. 29.

Defendant asked the MDL court to dismiss the failure-to-warn claims of eight Plaintiffs, based upon Section 82.007 of the Texas Civil Practice and Remedies Code ("Section 82.007"). Novartis claims this statute protects it from any products liability claims involving failure to provide adequate warnings if the drug at issue and accompanying warnings were approved by the U.S. Food and Drug Administration ("FDA").[3]

The statute lists the specific ways to rebut a presumption that a manufacturer is not liable, with respect to allegations involving failure to provide adequate warnings or information, if the drug at issue and accompanying warnings were approved by the FDA.[4] These enumerated means of rebuttal include the fraud-on-the-FDA exception (requiring a party to establish that the manufacturer withheld or misrepresented material information to the FDA),[5] and the off-label marketing exception (requiring a party to establish that a manufacturer recommended, promoted, or advertised the pharmaceutical product for an indication not approved by the FDA).[6]

Since the parties claimed that only one of the enumerated ways to rebut the presumption applied, specifically Section 82.007(b)(1) of the Texas Civil Practice and Remedies Code ("subsection (b)(1)"), the MDL court only addressed that subsection in its opinion.[7]

The Honorable Todd J. Campbell granted Defendant's Motion for Partial Summary Judgment and dismissed Plaintiffs' claim for "failure to provide adequate warning or information."[8] The MDL court reasoned that subsection (b)(1) of the Texas statute is preempted by Federal law due to federalism concerns, and plaintiffs were therefore precluded from establishing the facts required under that subsection to rebut the presumption.[9]

On July 6, 2011, Judge Campbell rejected the McKays' request for reconsideration of the failure-to-warn issue.[10] Novartis filed a summary judgment motion to dispose of the McKays' remaining claims on June 10, 2011.[11] On August 23, 2011, the McKays' case was remanded back to this court with Novartis' Motion to Exclude Causation Testimony of Plaintiffs' Experts and motion for summary judgment on the remaining claims.[12]

This court granted in part and denied in part Novartis' Motion to Exclude Causation Testimony of Plaintiffs' Experts. The court found the causation testimony of Dr. Kraut and Dr. Sitters to be reliable and

3. *In re Aredia and Zometa Products Liability Litigation*, No. 3:06–MDL–1760, 2008 WL 2944910, at *1 (M.D. Tenn.2008 Jul. 25, 2008).

4. *See* Tex.Civ.Prac. & Rem.Code § 82.007(a)-(b).

5. *See id.* at § 82.007(b)(1).

6. *See id.* at § 82.007(b)(3).

7. *In re Aredia and Zometa Products Liability Litigation*, No. 3:06–MDL–1760, 2008 WL 2944910, at *3 (M.D.Tenn. Jul. 25, 2008).

8. *Id.* at *4–5.

9. *Id.*

10. *See* "Memorandum," *Thomas W. McKay and Leticia McKay v. Novartis Pharmaceuticals Corp.*, No. 3:06–cv–527 (M.D.Tenn. Jul. 06, 2011), ECF No. 62.

11. *See* "Novartis Pharmaceuticals Corporation's Motion for Summary Judgment in the *McKay* Case," *Thomas W. McKay and Leticia McKay v. Novartis Pharmaceuticals Corp.*, No. 3:06–cv–527 (M.D.Tenn. Jun. 10, 2011), ECF No. 58.

12. *See* "Conditional Remand Order," *Thomas W. McKay and Leticia McKay v. Novartis Pharmaceuticals Corp.*, No. 3:06–cv–527 (M.D.Tenn. Aug. 23, 2011), ECF No. 83.

therefore admissible. However, the court held that Drs. Ambrose Aboud, Robert Bucy, Nathan Dickerson, Luis Loweree, Jorge Ramos, Panagiotis Valilis and Robert Leibowitz could not testify on the issue of causation.[13]

### B. Factual Background [14]

Aredia and Zometa are biphosphonates used to treat bone disorders. Aredia was first approved by the FDA in 1991 to treat hypercalcemia of malignancy, and was approved in 1996 to treat bone metastasis in patients with breast cancer. In 2002, the FDA approved Zometa for treatment of a number of conditions, including bone metastasis.

Thomas McKay ("McKay") was diagnosed with prostate cancer in 1997. The parties apparently dispute whether the cancer metastasized to McKay's bones. In 1997, he was prescribed Aredia, to be administered intravenously for osteoporosis, although the FDA had not approved the drug for that purpose. McKay took Aredia for several years, and was later prescribed Zometa as well. At some point, McKay developed severe jaw and dental problems, including non-healing tooth extraction sites and exposed bones. He was diagnosed with ONJ, a condition marked by dead and dying bone in the jaw.

### C. Parties' Arguments

Novartis seeks summary judgment on all of Plaintiffs' remaining claims. It argues all these claims are premised on Novartis' failure to warn McKay or provide adequate information and are therefore precluded by the MDL court's ruling applying Section 82.007.[15]

In addition, Novartis asserts Plaintiffs' design defect claim does not survive Texas' application of comment k of the Restatement (Second of Torts) § 402A, because the "MDL court has already ruled that § 82.007 precludes [Plaintiffs] from disputing [Novartis] provided a proper warning." [16] Novartis also argues that Plaintiffs' design defect fails, because they cannot offer admissible evidence of a safer alternative design.[17]

Further, Novartis argues Plaintiffs' warranty claims fail because Plaintiffs did not provide the statutorily required notice.[18] Novartis also contends Plaintiffs cannot present evidence that Novartis' products were defective, thereby causing their breach of implied warranty claim to fail.[19] In addition, Novartis argues Plaintiffs' breach of express warranty claim fails because Plaintiffs cannot identify any affirmative representation by Novartis.[20] Lastly, Novartis argues that Plaintiffs' negligent manufacture claim fails due to lack of evidence that any particular infu-

13. See "Order Granting in Part and Denying in Part Novartis Pharmaceuticals Corporation's *Daubert* Motion to Exclude Causation Testimony of Plaintiffs' Experts in the *McKay* Case"[ ECF No. 22].

14. The facts are undisputed except where noted.

15. See Mot. at 4, 7–8 [ECF No. 32] (Novartis citing *Lofton v. McNeil Consumer & Specialty Pharm.*, 682 F.Supp.2d 662, 675–76 (N.D.Tex. 2010), *aff'd* 672 F.3d 372 (5th Cir.2012); *Ebel v. Eli Lilly & Co.*, 536 F.Supp.2d 767, 773 (S.D.Tex.2008) (refusing to allow plaintiff to

plead around learned intermediary doctrine and render the doctrine "meaningless" by recasting failure to warn claims as claims for marketing defect, breach of warranty, and negligence)).

16. Mot. 10–11.

17. *Id.* at 12–16.

18. *Id.* at 16–17.

19. *Id.* at 17–18.

20. Mot. at 18–19.

sion of Aredia or Zometa McKay received was manufactured improperly, and Plaintiff Leticia McKay's loss of consortium fails because it is a derivative of Plaintiff Thomas McKay's failed claims.[21]

In response, Plaintiffs assert the remaining claims are viable under Texas law, notwithstanding the MDL court's prior ruling.[22] Plaintiffs argue Novartis erroneously relies on *Lofton v. McNeil Consumer & Specialty Pharmaceuticals ("Lofton")*[23] by not taking into account that it did not consider whether the entire Section 82.007 adequacy presumption should be struck down if the main rebuttal to the presumption is preempted.[24] Plaintiffs further argue that the standards of *Merrell Dow Pharmaceuticals, Inc. v. Havner*[25] are not applicable in federal cases, and that Novartis ignores evidence and the effect of off-label marketing in this case.[26] Plaintiffs' specific arguments are discussed *infra.*

## II. *APPLICABLE LAW*

Summary judgment should be granted only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judg-ment as a matter of law."[27] "A genuine issue of material fact exists when there is evidence sufficient for a rational trier of fact to find for the non-moving party."[28] The substantive law defines whether disputed facts are material.[29] The party moving for summary judgment bears an initial burden of identifying those portions of the pleadings and any discovery on record, including any affidavits, which she believes demonstrate the absence of a genuine issue of material fact.[30] The court will "view all facts in the light most favorable to the non-moving party,"[31] and draw all factual inferences in the nonmovant's favor.[32] If the moving party cannot demonstrate the absence of a genuine issue of material fact, summary judgment is inappropriate.[33]

If the movant does meet this burden, however, the nonmovant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."[34] Accordingly, the "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[35]

**21.** *Id.* at 19–20.

**22.** Resp. at 1.

**23.** 672 F.3d 372 (5th Cir.2012).

**24.** Resp. at 1.

**25.** 953 S.W.2d 706 (Tex.1997).

**26.** Resp. at 1–2.

**27.** Fed.R.Civ.P. 56(a).

**28.** *Perez v. Region 20 Educ. Serv. Ctr.,* 307 F.3d 318, 323 (5th Cir.2002) (citation omitted).

**29.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**30.** *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**31.** *Blow v. City of San Antonio, Tex.,* 236 F.3d 293, 296 (5th Cir.2001) (citations omitted).

**32.** *Cheatham v. Allstate Ins. Co.,* 465 F.3d 578, 582 (5th Cir.2006) (citation omitted).

**33.** *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995).

**34.** *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (internal quotation marks and citation omitted).

**35.** *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (internal quotation marks and citations omitted).

"[T]he nonmovant may not rely on mere allegations in the pleadings; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial."[36] The court does not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[37] "If the nonmovant fails to meet this burden, then summary judgment is appropriate."[38]

In reviewing the parties' submissions, the court does not "weigh the evidence or evaluate the credibility of the witnesses."[39] The court will consider only evidence in the record that would be admissible at trial.[40] Summary judgment is appropriate "if no reasonable juror could find for the nonmovant."[41]

## III. DISCUSSION

### A. Section 82.007 Adequacy Presumption & MDL Court's July 25, 2008 Order

On July, 25, 2008, the MDL court granted Novartis' Motion for Partial Summary Judgment dismissing Plaintiffs' failure-to-warn claims based upon Section 82.007.[42] Section 82.007 creates a rebuttable presumption that defendants, including manufacturers of pharmaceutical products, are not liable with respect to allegations involving failure to provide adequate warnings or information, if the pharmaceutical products at issue and accompanying warnings were approved by the FDA.[43] It is undisputed that the labels for both Aredia and Zometa were approved by the FDA at all times. However, Section 82.007 provides five means by which the non-liability presumption may be rebutted.[44]

The Fifth Circuit determined in *Lofton* that attempts to rebut the presumption pursuant to fraud-on-the-FDA claims under subsection (b)(1) are preempted "unless the FDA itself has found fraud."[45] Similarly, the MDL court dismissed Plaintiffs' "failure to provide adequate warning or information" claim reasoning that subsection (b)(1) of the Texas statute is preempted by Federal law due to federalism concerns.[46]

The MDL court addressed only subsection (b)(1), the fraud-on-the-FDA rebuttal, and thereby limited its opinion to only one of the five means to rebut the adequacy presumption.[47] Plaintiffs concede that "[t]he Court may hold the striking of the failure to warn count III is the law of the case and need not revisit it, but to the extent the remaining claims have elements of failure to warn as part of their make up or because of a Novartis defense ... they ought not be dismissed as there is evi-

---

**36.** *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir.2002) (internal quotation marks and citations omitted).

**37.** *Little*, 37 F.3d at 1075 (citation omitted) (emphasis removed).

**38.** *Tubacex, Inc.*, 45 F.3d at 954.

**39.** *Caboni*, 278 F.3d at 451 (citation omitted).

**40.** *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir.1995) (citation omitted).

**41.** *Caboni*, 278 F.3d at 451 (citations omitted).

**42.** *In re Aredia and Zometa Products Liability Litigation*, No. 3:06–MDL–1760, 2008 WL 2944910, at *5 (M.D.Tenn.2008).

**43.** *See* Tex. Civ. Prac. & Rem.Code § 82.007.

**44.** *Id.* at § 82.007(b).

**45.** 672 F.3d 372, 380–81 (5th Cir.2012).

**46.** *In re Aredia and Zometa Products Liability Litigation*, No. 3:06–MDL–1760, 2008 WL 2944910, at *5 (M.D.Tenn.2008).

**47.** *Id.* at *3.

dence of off-label promotion."[48] Off-label promotion is another specifically enumerated way the presumption can be rebutted.[49]

Plaintiffs argue that they can rebut the adequacy presumption of Section 82.007 by showing evidence of improper and off-label marketing, citing to subsections (b)(3–5) of the Texas Statute.[50] Novartis asserts the MDL court's ruling applying Section 82.007 precludes all remaining claims because they all involve Novartis' warning and information.[51]

### B. Consideration of Improper or Off-Label Marketing

■ The MDL court dismissed Plaintiffs' claims which allege "failure to provide adequate warnings or information" because "[n]either side claim[ed] that any of the specifically enumerated ways to rebut the presumption applies in this instance except subsection (b)(1)."[52] "The law of the case doctrine requires courts not revisit determinations of an earlier court unless (i) the evidence on a subsequent trial was substantially different; (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work ... manifest injustice."[53] The primary goal of the law of the case doctrine is to "achieve uniformity of decision, judicial economy, and efficiency."[54] Since the adequacy of the Novartis' warnings has been previously litigated and decided by the MDL court, it is the law of the case and continues to govern this issue in the current stage of the case.[55] Consequently, in order to avoid inconsistent rulings, the court will not revisit the MDL court's ruling regarding the adequacy of Novartis' warnings.

Similarly, to the extent Plaintiffs wish to rebut the adequacy of Novartis' warnings, the court will not consider evidence of off-label marketing. Accordingly, this court will consider Novartis' warnings adequate for purposes of this Motion.

However, out of an abundance of caution, the court will briefly address Plaintiffs' allegations that it can rebut the non-liability presumption by evidence of off-label marketing. Section 82.007(b)(3) of the Texas Civil Practice and Remedies Code ("subsection (b)(3)") requires Plaintiffs to provide evidence that (a) Novartis promoted Aredia or Zometa to McKay's prescribing physician for an indication not approved by the FDA; (b) McKay used Aredia or Zometa for that off-label use; and (c) the off-label promotion caused the prescribing physician to prescribe Aredia or Zometa to McKay for the off-label use.[56]

---

48. Resp. at 13.

49. Tex. Civ. Prac. & Rem.Code § 82.007(b)(3).

50. Resp. at 12–13, 15 (Plaintiffs argue, among other things, "[t]he MDL Court did not have clear evidence of this case of off-label marketing.")

51. Mot. at 4; *see also* Reply at 2.

52. *In re Aredia and Zometa Products Liability Litigation*, No. 3:06–MDL–1760, 2008 WL 2944910, at *3–4 (M.D.Tenn.2008).

53. *In re Ford Motor Co.*, 591 F.3d 406, 411–12 (5th Cir.2009) (internal quotations and citations omitted).

54. *In re Allied Physicians Group, P.A.*, No. 397–31267–HCA–7, 2003 WL 21149493, at *4 (N.D.Tex.2003) (citing *In re Thornburg* 277 B.R. 719, 724 (Bankr.E.D.Tex.2002)).

55. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) ("The doctrine 'is a rule or practice, based on sound policy that, when an issue is once litigated and decided, that should be the end of the matter' ").

56. Tex. Civ. Prac. & Rem.Code § 82.007(b)(3); *see also Murthy v. Abbott Laboratories*, No. 4:11–cv–105, 2012 WL 6020157, at *3 (S.D.Tex.2012).

■ Contrary to Plaintiffs' arguments, the court notes Plaintiffs must provide evidence that recommendations, promotions, or advertisements to use Aredia or Zometa for off-label purposes reached and were relied on by the *prescribing physician*.[57] Plaintiffs assert Dr. Leibowitz's directions were followed by all of McKay's other doctors, thereby making him the prescribing physician.[58] Consequently, Plaintiffs must provide evidence that establishes off-label promotion reached Dr. Leibowitz.

Novartis does not dispute that neither Aredia nor Zometa are approved for the treatment of bone metastasis in prostate cancer or for the treatment of osteoporosis.[59] Novartis asserts "Plaintiffs offer no evidence that [Novartis] improperly marketed Aredia and Zometa for off-label used to Dr. Leibowitz."[60] In response, Plaintiffs assert that Dr. Leibowitz learned of the 120 milligrams dose of Aredia for prostate patients from Dr. Berenson, a Novartis consultant and key opinion leader.[61] In its Reply, Novartis characterizes Dr. Berenson as merely "another doctor in private practice," who suggested that Dr. Leibowitz use Aredia for prostate patients.[62]

Although Plaintiffs do provide evidence that Dr. Berenson "marketed" Aredia to Dr. Leibowitz for an off-label use, they do not provide any evidence that Dr. Berenson is a Novartis agent or a key opinion leader who drove off-label marketing efforts for Novartis.[63]

Accordingly, Plaintiffs have provided insufficient evidence to establish that any off-label promotion of Aredia or Zometa, by Novartis, actually reached and influenced Dr. Leibowitz, the prescribing physician. Therefore, Plaintiffs' attempt to rebut the adequacy presumption of Section 82.007 by showing evidence of off-label marketing or over-promotion under subsection (b)(3) fails.

### C. Severability of Section 82.007(b)(1) from Section 82.007(a)

Similar to the purpose for providing evidence of off-label marketing, Plaintiffs are attempting to re-litigate the failure to warn action already settled by the MDL court. Again, out of an abundance of the caution, the court will briefly discuss Plaintiffs' arguments.

Plaintiffs argue that the entirety of Section 82.007 must be struck because Section

---

57. *Murthy*, 2012 WL 6020157, at *3; *see also Ebel v. Eli Lilly*, 536 F.Supp.2d 767, 777 (S.D.Tex.2008) (holding that "to establish the exception of overpromotion, [p]laintiff must not only provide evidence of a marketing plan to the off-label use of [the drug], [plaintiff] must also provide proof that the marketing plan actually reached the prescribing physician"); *Sita v. Danek Medical, Inc.*, 43 F.Supp.2d 245, 263 (E.D.N.Y.1999) ("To prevail, plaintiff must establish that [the prescribing physician] was influenced by the illegal marketing efforts.") (applying New York law).

58. Resp. at 1, n. 1, 4.

59. "Novartis Pharmaceuticals Corporations' Statement of Undisputed Fact in Support Of Motion for Summary Judgment In *McKay* Case," at ¶¶ 7–8, *Thomas W. McKay and Leticia McKay v. Novartis Pharmaceuticals Corp.*, No. 3:06–cv–527 (M.D.Tenn. Jul. 10, 2011), ECF No. 60.

60. Reply at 5.

61. *See* Resp. at 4.

62. Reply at 5–6, n. 2.

63. Plaintiffs cite to Robert L. Leibowitz' Deposition, at 119:1–12 [ECF No. 39–2] (stating that Dr. Leibowitz "had heard about the 120 milligrams dose from Dr. Berenson and his belief that it was more active and just as safe as a 90 milligram dose," but not stating or defining any relationship—commercial or otherwise—between Novartis and Dr. Berenson).

82.007(b)(1) has been preempted.[64] The parties point to two cases that appear to have addressed this specific issue: *Murthy v. Abbott Laboratories* [65] and *Anderson v. Abbott Laboratories.*[66] Both the *Murthy* and *Anderson* courts concluded "that sections 82.007(a)(1) and 82.007(b)(1) are independent of and severable from one another, and the preemption of 82.007(b)(1) does not affect section 82.007(a)(1)." [67]

Plaintiffs attempt to distinguish *Anderson* on three grounds: (1) in this cause there is testimony of McKay's physicians off-label marketing—a distinct and separate rebuttal to sub-section 82.007(a)(1); (2) in this cause, the use of the drug that allegedly caused the harm preceded the effective date of the statute; and (3) in *Anderson,* plaintiff did not make the statutory construction argument made here.[68]

As discussed above, the court will not consider evidence of off-label marketing to the extent Plaintiffs attempt to use this evidence to circumvent the MDL court's ruling.

■ This court also finds Plaintiffs' second distinction—that the use of the drug that allegedly caused the harm preceded the effective date of the statute—unper-suasive. Section 82.007 has an effective date of September 1, 2003.[69] Plaintiffs filed the instant lawsuit in 2006.[70] Plaintiffs argue "McKay had begun his Aredia in 1998 and was prescribed the great bulk of his prescriptions of bisphosphonates before the effective date of the statute." [71] However, the Texas Supreme Court has made clear that the threshold issue, when deciding whether to apply Section 82.007, is whether a plaintiff brought suit before the statute became effective.[72] Here, Plaintiffs brought suit after the statute became effective and consequently Section 82.007 is applicable.[73] Consequently, Plaintiffs' second argument to distinguish *Anderson* is also unavailing.

Third, Plaintiffs argue that the Section 82.007(a)(1) presumption must fall "because it is undisputed no legislature would pass the presumption without the prescribed method of overcoming it as it works as an immunity otherwise." [74] However, the undersigned agrees with the *Murthy* and *Anderson* courts' reasoning and concludes sections 82.007(a)(1) and 82.007(b)(1) are independent of and severable from one another, and thus the preemption of section 82.007(b)(1) does not affect section 82.007(a)(1). Moreover, the non-liability presumption in section

---

64. Resp. at 12, 20–24.

65. 847 F.Supp.2d 958 (S.D.Tex.2012).

66. No. 3:11–cv–1825–L, 2012 WL 4512484 (N.D.Tex.2012).

67. *Id.* at *6; *see also Murthy,* 847 F.Supp.2d at 976 n. 8.

68. *See* "Plaintiffs' Response to Defendant's Notice of Supplemental Authority," at 1–2 [ECF No. 51].

69. *See Centocor Inc. v. Hamilton,* 372 S.W.3d 140, 161 n. 19 (Tex.2012).

70. *See* "Complaint and Jury Demand" [ECF No. 1], filed February 15, 2006.

71. Resp. at 12.

72. *Centocor Inc.,* 372 S.W.3d at 161 n. 19.

73. *See* Acts 2003, 78th Leg., ch. 2004, § 23.02(d) (Section 82.007 "applies only to an action filed on or after the effective date [Sept. 1, 2003] ... [a]n action filed before the effective date of this Act ... is governed by the law in effect immediately before the change in law made by this Act, and that law is continued in effect for that purpose").

74. "Plaintiffs' Response to Defendant's Notice of Supplemental Authority," at 2 [ECF No. 51].

82.007(a)(1) can be rebutted by other sections of the statute, namely sections 82.007(b)(2)-(5).[75]

### D. Whether the Instant Action is a No warning or Inadequate Warning Action

Plaintiffs attempt to distinguish this matter as a "no warning" case as opposed to an inadequate warning case.[76] They cite to *Ebel v. Eli Lilly & Co.* for the proposition that a "no warning" case is one where Section 82.007 would not apply.[77] Plaintiffs assert "[t]he worst damage from the drug was done to Mr. McKay when *no information* of any kind was on the label," and that this was the case until September 1, 2003.[78] As Defendant does not dispute that there was no warning of the circumstances complained of prior to September 1, 2003, Plaintiffs claim the adequacy presumption in Section 82.007 would not be applicable prior to that date.

However, as the MDL court explicitly determined that Novartis' warnings were adequate at all times relevant to this suit, the undersigned has to disregard this distinction and consider Novartis' warnings were adequate.

### E. Whether Plaintiffs' remaining claims are premised on Novartis' Failure To Warn Claim

As this case is before the court based on diversity and the MDL court found Texas law applies, Texas products liability law will be followed. Under Texas law, a "products liability action" is defined as "any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based on strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories." [79]

Recently, courts have held that a plaintiff's failure to warn claims—although labeled as negligence, strict liability, and breach of warranty—nonetheless are subject to the statutory presumption of nonliability found in Section 82.007 and the learned intermediary doctrine.[80] As this court will not disturb or revisit the find-

---

**75.** *See Murthy,* 847 F.Supp.2d at 976 n. 8 (internal citations and quotations omitted) ("If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must stand").

**76.** Resp. at 18–19.

**77.** *Id.* (citing to *Ebel,* 536 F.Supp.2d at 775–76 (concluding that is was not a "no warning" case because the risks that Plaintiff complained of were mentioned on the label); *McNeil v. Wyeth,* 462 F.3d 364, 368 (5th Cir. 2006) ("[W]hen a warning specifically mentions the circumstances complained of, the warning is adequate as a matter of law.")); *see also Ackermann v. Wyeth Pharmaceuticals,* 471 F.Supp.2d 739, 746 (E.D.Tex.2006); *Ro-*

*len v. Burroughs Wellcome Co.,* 856 S.W.2d 607, 609 (Tex.App.-Waco 1993).

**78.** Resp. at 18 (emphasis in original).

**79.** Tex. Civ. Prac. & Rem.Code § 82.001(2).

**80.** *See Accutane Prods. Liab.,* No. 8:04–md–02523–JSM–TBM, ECF No. 1300, at *6 (M.D.Fla. Feb. 28, 2013) (citing *Del Valle v. Qualitest Pharms. Inc.,* 2012 WL 2899406, at *2 (S.D.Tex.2012) (finding that "presumption of no liability applies regardless of how the cause of action is framed" and noting that the presumption applies if "the claim is based upon the labeling, its omissions, or inaccuracies")); *see also Murthy,* 847 F.Supp.2d at 977 (holding that because plaintiff's "strict liability and breach of warranty claims are premised on failure to warn, they must be dismissed pursuant to § 82.007(a)").

ings made by MDL court, this court must determine which of Plaintiffs' claims rest on allegations that Novartis failed to warn of Aredia and Zometa's dangerous side effects to ascertain whether any of Plaintiff's remaining claims survive.[81] If any of the claims in Plaintiffs' Amended Complaint are based on Novartis' failure to warn or can be defeated by a substantiation of an adequate warning, which was established by the MDL court,[82] those claims must fail.

The Amended Complaint alleges the following causes of action: Count I (strict liability-design defect), Count II (negligence-negligent manufacture), Count III (failure to warn), Count IV (breach of express warranty), Count V (breach of implied warranty), and Count VI (loss of consortium).[83]

### a. *Strict Liability/Design Defect*

In the Amended Complaint, Plaintiffs allege:

Aredia and Zometa cause increased risk of osteonecrosis of the jaw upon consumption, and therefore constitute products unreasonably dangerous for normal use due to their defective design, defective manufacture, and the *Defendant's misrepresentations and inadequate facts disclosed to Plaintiff,* including, *inter alia,* the actual risk of developing osteonecrosis of the jaw and the permanent, irreversible harm associated with this disease.[84]

Texas adopted Section 402A of the *Restatement (Second) of Torts* providing for strict liability for the sale of dangerously defective products.[85] The *Restatement (Second) of Torts* Section 402A, comment k applies to prescription drugs, such as Aredia and Zometa[86] and reads as follows:

4 k. Unavoidably unsafe products. There are some products which, in the present state of human knowledge, are quite incapable of being made safe for

**81.** *See Centocor, Inc. v. Hamilton,* 372 S.W.3d 140, 168–69 (Tex.2012) (when analyzing the applicability of the learned intermediary theory, the Texas Supreme court stated that "[i]f the doctrine could be avoided by casting what is essentially a failure to warn claim under a different cause of action such a violation of the DTPA or a claim for misrepresentation, then the doctrine would be rendered meaningless") (internal quotations and citations omitted); *see also Lofton,* 672 F.3d at 380 (rejecting plaintiff's argument "that it makes a difference for preemption purposes whether the fraud-on-the-FDA has become an 'element' of traditional tort claims because of state statutes, or an item of rebuttal to the defendant's affirmative defense"); *Ebel,* 536 F.Supp.2d at 773 ("Where the crux of the suit is based on a failure to adequately warn, the learned intermediary doctrine may apply to strict liability, negligence, misrepresentation, and breach of warranty claims.") *aff'd,* 321 Fed.Appx. 350 (5th Cir.2009).

**82.** The MDL court held that the Plaintiffs' claims alleging "failure to provide adequate warnings or information" were foreclosed by

the Texas statutory presumption that FDA-approved labels are adequate. *See* Order, *In re Aredia & Zometa Prods. Liab. Litig.,* No. 3:06–MD–1760, 2008 WL 2944910, at *5.

**83.** *See* "Amended Complaint and Jury Demand," *Thomas W. McKay and Leticia McKay v. Novartis Pharmaceuticals Corp.,* No. 3:06–cv–527, 2006 WL 4044995 (M.D.Tenn. Dec. 22, 2006), ECF No. 223.

**84.** *Id.* at ¶ 21 (emphasis added).

**85.** *See Gonzalez v. Bayer Healthcare Pharmaceuticals, Inc.,* 930 F.Supp.2d 808, 817, No. H–12–1412, 2013 WL 960652, *8 (S.D.Tex. 2013) (citing *Parsons v. Ford Motor Co.,* 85 S.W.3d 323, 329 (Tex.App.Austin 2002)).

**86.** *See Centocor,* 372 S.W.3d at 164–165 (applying comment k of the *Restatement (Second) of Torts* to prescription drugs); *see also Hackett v. G.D. Searle & Co.,* 246 F.Supp.2d 591, 595 (W.D.Tex.2002) (citing *Reyes v. Wyeth Labs.,* 498 F.2d 1264, 1273–75 (5th Cir. 1974)).

their intended and ordinary use. These are especially common in the field of drugs ... Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous ... The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.[87]

■ Consequently, prescription drugs cannot be found unreasonably dangerous and a seller cannot be held strictly liable where the drugs are accompanied by an adequate warning. Accordingly, "[p]rescription drugs are not susceptible to a design defect claim where ... the drug is accompanied by proper directions and warning." [88]

■ Under the learned intermediary doctrine, a "prescription drug manufacturer fulfills its duty to warn end users of its product's risks by providing adequate warnings to the intermediaries who prescribe the drug and, once fulfilled, it has no further duty to warn the end users directly." [89] Contrary to Plaintiffs' assertion that Novartis was required to warn all of Plaintiffs' non-prescribing physicians and dentists, the Texas Supreme Court clarified that McKay's prescribing physician is the relevant person.[90] Consequently, the court finds Novartis was only required to warn Dr. Leibowitz, Plaintiffs' prescribing physician. The parties do not dispute that Novartis warned Dr. Leibowitz.

Furthermore, Plaintiffs concede the Texas Supreme Court declined to create a direct-to-consumer exception to the learned intermediary doctrine in a failure to warn action against a prescription drug manufacturer.[91] Consequently, any argument that the non-liability presumption and learned intermediary doctrine are not applicable in the instant cause is foreclosed, even if Novartis directly advertised to McKay.

Nonetheless, Plaintiffs point out that "if the warning to the prescriber is inadequate or misleading, the prescription drug manufacturer remains liable for the injuries sustained." [92] Due to the MDL court's July 25, 2008 ruling, this court will

---

**87.** Rest.2d Torts § 402A cmt. k (1965).

**88.** *Holland v. Hoffman–La Roche, Inc.*, No. 3–06–cv–1298–BD, 2007 WL 4042757, at *3 (N.D.Tex.2007) (internal quotations and citations omitted).

**89.** *Centocor*, 372 S.W.3d at 157 (internal citation omitted).

**90.** *Id.* at 166–67 ("To hold that each healthcare provider owes a separate and individual duty to warn each patient of all possible risks associated with a treatment prescribed by any doctor would not only undermine the prescribing doctor's physician-patient relationship, but could thwart the efforts of prescription drug manufacturers to provide valuable educational information about available treatments ... [i]n most prescription drug contexts, the learned intermediary doctrine applies and the duty to warn the patient rests solely with the prescribing physician"); *see also Carter v. TAP Pharm., Inc.*, No. SA–03–CA–0182, 2004 WL 2550593, at *2 (W.D.Tex. Nov. 2, 2004) ("The Fifth Circuit has held that the manufacturer must only warn the prescribing physician because he/she acts as a learned intermediary between the manufacturer and patient").

**91.** *Id.* at 162–163

**92.** "Plaintiffs' Notice of Supplemental Authority," at 2 [ECF No. 44] (citing *Centocor*, 372 S.W.3d at 170).

consider Novartis' warnings adequate at all times. As a result, Novartis is entitled to judgment in its favor on Plaintiffs' design defect claim.[93]

#### b. *Negligent Manufacture*

In their Response, Plaintiffs state they "are not maintaining a negligent manufacture claim."[94] Accordingly, the court will grant Defendant summary judgment on Plaintiffs' negligent manufacture claims.

#### c. *Failure to Warn*

Plaintiffs also concede "[t]he Court may hold the striking of the failure to warn count III is law of the case and need not revisit it."[95] As discussed *supra*, this court finds that the July 25, 2008 MDL court ruling is the law of the case, and will not revisit the findings made therein.

#### d. *Breach of Express Warranty*

In the Amended Complaint, Plaintiffs allege:

> Defendant expressly warranted to Plaintiff, *by and through statements made by Defendant or its authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public*, that Aredia and Zometa were safe, effective, fit and proper for their intended use.[96]

Novartis asserts that Plaintiffs, through their breach of express warranty cause of action, are placing the adequacy and information contained in the FDA-approved labels into doubt.[97] It argues that the Section 82.007 adequacy presumption and the learned intermediary doctrine apply to this breach of express warranty given that the Texas Supreme Court held plaintiffs "cannot plead around the basic requirements of a failure-to-warn-claim."[98]

However, Plaintiffs allege that "the package insert has no mention of bisphosphonate ONJ and Novartis warrants that the drug will *strenghten bones* and prevent fractures."[99] Furthermore, Plaintiffs state "that Plaintiffs claim the 'well documented risk factors' asserted on the labels are not just a failure to warn, but also affirmative falsehoods meant to mislead ... [and are] more than simply leaving something off the label."[100]

The Texas Supreme Court in *Centocor, Inc. v. Hamilton* distinguishes warnings that contain an overt misrepresentation or inaccurate information from warnings where an omission of additional information makes the warning inadequate.[101]

---

93. *See Accutane Prods. Liab.*, No. 8:04–md–02523–JSM–TBM, ECF No. 1300, at *6 (M.D.Fla. Feb. 28, 2013) (citing *Hackett*, 246 F.Supp.2d at 595; *Holland*, 2007 WL 4042757, at *3; *Solomon v. Bristol–Myers Squibb Co.*, 916 F.Supp.2d 556, 563, 2013 WL 64778, at *14 (D.N.J.2013) (applying Texas law)).

94. Resp. at 19 n. 12.

95. *See id.* at 13.

96. *See* "Amended Complaint and Jury Demand," at ¶ 39, *Thomas W. McKay and Leticia McKay v. Novartis Pharmaceuticals Corp.*, No. 3:06–cv–527, 2006 WL 4044995 (M.D.Tenn.

Dec. 22, 2006), ECF No. 223 (emphasis added).

97. Reply at 9–10.

98. "Novartis Pharmaceuticals Corporation's Cross–Notice and Response to Plaintiffs' Notice of Supplemental Authority," at 5(citing *Centocor*, 372 S.W.3d at 169 n. 30).

99. Resp. at 19 (emphasis in original).

100. *Id.* at 19 n. 14.

101. *See Centocor*, 372 S.W.3d at 169 n. 30. (*citing Crocker v. Winthrop Labs., Div. Of Sterling Drug, Inc.*, 514 S.W.2d 429, 433 (Tex.

The Court determined the learned intermediary doctrine applies in the context of prescription drugs with regard to failure to warn claims.[102] It held all of plaintiff's fraud, negligence, and misrepresentation claims against a prescription drug manufacturer were barred by the learned intermediary doctrine, because the crux of plaintiff's claims were premised on failure to warn.[103] Further, the Court suggested that a claim based an affirmative misrepresentation (i.e. based on an overt misrepresentation or inaccurate information) would not be regarded as a claim premised on failure to warn.[104]

Because Plaintiffs allege an overt misrepresentation by Novartis (i.e. that the drug will strengthen bones) and not an omission that made the warning inadequate, the breach of express warranty claim is distinct from a failure to warn claim.

### 1. Statutorily Required Notice

■ Defendant asserts Plaintiffs' warranty claims should be dismissed for his failure to provide statutorily required notice to Novartis prior to filing suit.[105] Un-

der Texas law, a buyer is required to notify the seller "within a reasonable time" that a breach of warranty has occurred.[106] "Failure to notify the seller of the breach, thereby allowing the seller an opportunity to cure, bars recovery on the basis of breach of warranty." [107]

■ In response, Plaintiffs argue that any pre-suit notice requirement was satisfied, because Dr. Leibowitz—Plaintiffs' prescribing physician—notified Novartis about defects of its drug directly.[108] Plaintiffs assert that Dr. Leibowitz is also Plaintiffs' agent for purposes of pre-suit notice.[109]

The Texas Supreme Court has acknowledged a split among its courts of appeals with regard to whether a buyer is required to give notice of an alleged breach of warranty to a remote seller/manufacturer, pursuant to the Texas Business and Commerce Code Section 2.607(c)(1).[110] Three out of the four Texas courts of appeals which have addressed the issue have held that a buyer is required to give notice of an alleged breach of warranty to a remote as well as an immediate seller/manufactur-

1974) ("Whatever the danger and state of medical knowledge, and however rare the susceptibility of the user, when the drug company positively and specifically represents its product to be free and safe from all dangers of addiction, and when the treating physician relies upon that representation, the drug company is liable when the representation proves to be false and harm results.")).

102. *Id.* at 157–59.

103. *Id.* at 168–69.

104. *See id.* at 169 n. 30.

105. Mot. at 16–17 (citing Tex. Bus. & Com. Code § 2.607(c)(1); *Holland,* 2007 WL 4042757, at *3; *Ackermann v. Wyeth Pharm.,* 471 F.Supp.2d 739, 745 (E.D.Tex.2006); *U.S. Tire–Tech, Inc. v. Boeran, B.V.,* 110 S.W.3d 194, 199 (Tex.Ct.App.2003)).

106. *See* Tex. Bus. & Com.Code § 2.607(c)(1).

107. *Lochinvar Corp. v. Meyers,* 930 S.W.2d 182, 189 (Tex.App.-Dallas 1996, no pet.) (citing *Miller v. Spencer,* 732 S.W.2d 758, 761 (Tex.App.-Dallas 1987, no writ)).

108. Resp. at 19–20 (citing *Palmer v. A.H. Robins Co., Inc.,* 684 P.2d 187, 206–07 (Colo. 1984); "Plaintiffs' Summary of Facts, Appendix Filed in Support of Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment" [ECF No. 39] at Exhibit 2, 136:1–11(Dr. Leibowitz reporting dental problems to Novartis)).

109. *Id.* at 20.

110. *Wilcox v. Hillcrest Mem'l Park of Dallas,* 701 S.W.2d 842, 843 (Tex.1986) (expressly reserving judgment on the issue).

er.[111] This would mean that Plaintiffs would have had to provide notice to Dr. Leibowitz, the immediate seller, and Novartis, the remote manufacturer, to sustain a breach of warranty claim under this majority rule.

Plaintiffs cite to *Palmer v. A.H. Robins Co.*, where the Colorado Supreme Court interpreted a similar section of Colorado's Uniform Commercial Code and held that "as long as the buyer has given notice of the defect to his or her immediate seller, no further notification to those distributors beyond the immediate seller is required."[112]

■ The Texas Supreme Court has not decided the issue whether a buyer must notify a remote seller-manufacturer of an alleged breach of warranty.[113] "When confronted with an unsettled issue of state law, a federal court sitting in diversity must make its best effort to predict how the state courts would decide the issue."[114] "In making an *Erie* guess, [federal courts] defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise"[115] In *U.S. Tire–Tech, Inc. v. Boeran, B.V.*, the Houston Court of Appeals held notice of generalized problems/concerns by an intermediary to a defendant/manufacturer without identifying the plaintiff/end user does not satisfy a plaintiff's notice requirement to bring a claim for breach of express warranty.[116] The court finds the reasoning of the majority of intermediate Texas appellate court decisions persuasive, and believes the Texas Supreme Court would likely hold that a buyer is required to give notice of an alleged breach of warranty to a remote seller/manufacturer, pursuant to the Section 2.607(c)(1) of the Texas Business and Commerce Code.[117] Consequently, a generic notice that Novartis might have had regarding problems with Aredia and/or Zometa generally does not suffice under Texas law.[118] Instead, the notice must have alerted Novartis to a particular buyer/end user, namely McKay, who was having problems with its products.[119]

---

**111.** See *Wilcox v. Hillcrest Mem'l Park of Dallas*, 696 S.W.2d 423, 424–25 (Tex.App.-Dallas 1985), writ ref'd per curiam, 701 S.W.2d 842 (Tex.1986); *see also U.S. Tire–Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 199 (Tex.App.-Houston [1st Dist.] 2003, pet. denied); *Bailey v. Smith*, No. 13–05–085–CV, 2006 WL 1360846, at *4–5 (Tex.App.-Corpus Christi 2006); *cf. Vintage Homes, Inc. v. Coldiron*, 585 S.W.2d 886, 888 (Tex.App.-El Paso 1979, no writ) (holding the notice requirement applies only between buyer and immediate seller).

**112.** *Palmer*, 684 P.2d at 206.

**113.** *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 674 n. 14 (Tex.2004).

**114.** *Murthy*, 847 F.Supp.2d at 970 (quoting *Batts v. Tow–Motor Forklift Co.*, 66 F.3d 743, 750 (5th Cir.1995)).

**115.** *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland*, 524 F.3d 676, 678 (5th Cir.2008).

**116.** See *U.S. Tire–Tech, Inc.*, 110 S.W.3d at 201–202.

**117.** See *Wilcox*, 696 S.W.2d at 424 (stating that the purpose of the notice is "to give the seller an opportunity to inspect the product to determine whether it was defective and to allow the seller an opportunity to cure the breach"); *see also* Tex. Bus. & Com.Code § 2.607 cmt. 4 (notice "opens the way for normal settlement through negotiation").

**118.** See *In re Ford Co. E–350 Van Products Liab. Litig. (No. II)*, 2010 WL 2813788, at *53 (citing *U.S. Tire–Tech Inc.* 110 S.W.3d at 202 (stating that "[t]he manufacturer must be made aware of a problem with a particular product purchased by a particular buyer.")).

**119.** See "Plaintiffs' Summary of Facts Appendix Filed in Support of Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment" [ECF No. 39] at Exhibit 2, 136:1–11 (Dr. Leibowitz stating: "If it was

Plaintiffs further argue notice was provided by the filing of a class action against Novartis in which McKay would be a member.[120]

The court agrees with Novartis that commencement of litigation did not satisfy the pre-suit notice requirement under Texas law.[121] At least one Texas Court of Appeals has held that commencement of litigation does not satisfy the notice requirement.[122] To the extent Plaintiffs argue the filing of a separate and distinct class action against Novartis satisfied the notice requirement, the court holds that such an interpretation would undermine an important purpose of the notice requirement. The filing of class action, without specifically identifying McKay, fails to "open[ ]the way for normal settlement through negotiation."[123]

Plaintiffs also contend the nature of bisphosphonate drugs is such that "there was no way for Mr. McKay to know he would suffer BRONJ until he suffered it, and accordingly there was no way for Novartis to 'cure' the problem by additional pre-suit notice."[124] This argument ignores the policies behind the notice requirement: "to enable the seller to make adjustments or replacements or suggest opportunities for cure to the end of minimizing the buyer's loss and reducing the seller's own liability to the buyer; to afford the seller an opportunity to arm himself for negotiation and litigation; and ... to give the defendant seller the same kind of mind balm he gets from the statute of limitations."[125] By failing to provide Novartis notice about defects in its drugs, it was not provided an opportunity to cure (i.e. by negotiation and settlement) and thereby perhaps obviate the need for this lawsuit.

Accordingly, the court finds Plaintiffs did not satisfy the Section 2.607(c)(1) notice requirement to bring a claim for breach of express warranty, even if Dr. Leibowitz subsequently generally informed Novartis about defects in its drugs.[126]

### 2. *Privity*

In light of the court's holding on the pre-suit notice issue, the court need not decide whether Plaintiffs are required to be in privity with Novartis or whether such privity has been established by the evidence.

### 3. *Affirmative Representation/Preemption*

Similarly, in light of the court's holding on the pre-suit notice issue, the court de-

January '04, I had already made my report to Novartis. But, remember that I simply reported dental problems, and I don't believe anyone had given it a name").

**120.** Resp. at 19–20.

**121.** *See In re Ford Co. E–350 Van Products Liab. Litig. (No. II)*, Civil Action No. 03–4558(GEB), 2010 WL 2813788, at *53 (D.N.J. 2010) (applying Texas law) (citing *U.S. Tire–Tech Inc.*, 110 S.W.3d at 202).

**122.** *See U.S. Tire–Tech Inc.*, 110 S.W.3d at 202.

**123.** *See* Tex. Bus. & Com.Code § 2.607 cmt. 4 (notice "opens the way for normal settlement through negotiation").

**124.** Resp. at 20 (citing *DiPetrillo v. Dow Chem. Co.*, 729 A.2d 677, 683 (R.I.1999)).

**125.** *EPN–Delaval, S.A. v. Inter–Equip, Inc.*, 542 F.Supp. 238, 249 (S.D.Tex.1982) (internal citations omitted).

**126.** *See U.S. Tire–Tech Inc.*, 110 S.W.3d at 201–02 (holding that the notice requirement was not met where plaintiff/tire-distributor presented no evidence that it directly gave defendant/manufacturer notice prior to filing suit, despite marketer/middleman's notice to defendant/manufacturer).

clines to decide whether Plaintiffs made a showing of an affirmative representation to sustain a claim for a breach of express warranty, or whether the Fifth Circuit's decision in *Bass v. Stryker Corp.*[127] preempts Plaintiffs' warranty claims.

### e. *Breach of Implied Warranty*

The court notes that "[p]re-suit notice is also condition precedent to actions based on breach of implied warranty."[128] As discussed above, Plaintiffs failed to provide Novartis pre-suit notice of the product's alleged defect as required by Texas law. Accordingly, Plaintiffs' breach of implied warranty is not viable.

### f. *Loss of Consortium*

The last count of Plaintiffs' complaint states a claims for loss of consortium. Under Texas law, this claims is a derivative claim and requires proof that Novartis caused injury to McKay.[129] Since the court has granted summary judgment for Novartis on all of Plaintiffs' underlying claims, Plaintiffs' derivative claim for loss of consortium must also fail as a matter of law.[130] The court therefore grants summary judgment for Novartis on Plaintiffs' claim for loss of consortium.

## IV. *ORDER*

Novartis is entitled to judgment as a matter of law on all of Plaintiffs' remaining claims. Accordingly, Novartis Pharmaceuticals Corporation's Motion for Summary Judgment is **GRANTED.**

**SO ORDERED.**

---

**127.** 669 F.3d 501, 516–17 (5th Cir.2012) (stating that a plaintiff's claim that defendant breached implied warranty despite its compliance with the FDA requirement is preempted).

**128.** *Martin v. Home Depot, U.S.A., Inc.,* 369 F.Supp.2d 887, 893 (W.D.Tex.2005) (citing *U.S. Tire–Tech., Inc.,* 110 S.W.3d at 201 ("The notice requirement for both breach of implied warranty and breach of express warranty springs from the same source—section 2.607(c)(1) of the Texas Business and Commerce Code")).

**129.** *See Koenig v. Purdue Pharma Co.* 435 F.Supp.2d 551, 557–58 (N.D.Tex.2006) (citing *Upjohn Co. v. Freeman,* 885 S.W.2d 538, 549 (Tex.App.-Dallas 1994, writ denied)).

**130.** *See Upjohn,* 885 S.W.2d at 549.