Kyle WELLS, Individually, and as Executor of the Estate of Bobbye Jean Cooper, Plaintiff,

v.

WYETH PHARMACEUTICALS, INC., a Subsidiary of Pfizer, Inc., and Zydus Pharmaceuticals USA, Inc., Defendants.

CAUSE NO. 1:16–CV–593–LY

United States District Court, W.D. Texas, Austin Division.

Signed 01/11/2017

Craig D. Henderson, Jack Edward Urquhart, Kathryn Snapka, The Snapka Law Firm, Corpus Christi, TX, for Plaintiff.

Christopher G. Campbell, DLA Piper, LLP (US), Atlanta, GA, Kevin C. Newsom, Lindsey C. Boney, IV, Bradley Arant Boult Cummings LLP, Birmingham, AL, Kimberly Bessiere Martin, Bradley Arant Boult Cummings LLP, Huntsville, AL, Meghan Paulk Ingle, DLA Piper LLP (US), Paul Clark Aspy, Naman Howell Smith & Lee, Austin, TX, Arthur J. Liederman, Nicole Battisti, Morrison Mahoney, LLP, New York, NY, for Defendants.

## ORDER ON REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

LEE YEAKEL, UNITED STATES DISTRICT JUDGE

Before the court are Defendant Wyeth Pharmaceuticals Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint (Clerk's Doc. No. 28); Plaintiff's Amended Memorandum in Response to Defendant Wyeth's Motion to Dismiss First Amended Complaint (Clerk's Doc. No. 30); and Defendant Wyeth Pharmaceuticals Inc.'s Reply Brief in Support of its Motion to Dismiss Plaintiff's First Amended Complaint (Clerk's Doc. No. 34). The motion was referred to the United States Magistrate Judge for a Report and Recommendation as to the merits. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72; W.D. Tex. Appx C, R. 1(d). The magistrate judge filed his Report and Recommendation on December 16, 2016 (Clerk's Doc. No. 56), recommending that this court grant the motion.

■ A party may serve and file specific, written objections to the proposed findings and recommendations of the magistrate judge within 14 days after being served with a copy of the report and recommendation, and thereby secure a *de novo* review by the District Court. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation in a Report and Recommendation bars that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*). The record reflects that the parties received the Report and Recommendation on December 16, 2016. Plaintiff timely filed an objection on December 30, 2016 (Clerk's Doc. No. 57).

In light of Plaintiff's objection, the court has undertaken a *de novo* review of the motion, response, reply, objection, applicable law, and entire case file in this cause. The court concludes that the objections raise only issues thoroughly and properly addressed by the magistrate judge in his Report and Recommendation. Therefore, the court will overrule Plaintiff's objections and approve and adopt the magistrate judge's Report and Recommendation as filed for substantially the reasons stated therein.

IT IS THEREFORE ORDERED that Plaintiff's Objection to Magistrate's Report and Recommendations (Clerk's Doc. No. 57) is **OVERRULED**.

IT IS FURTHER ORDERED that the Report and Recommendation of the United

States Magistrate Judge (Clerk's Doc. No. 56) is **ACCEPTED AND ADOPTED** by the court.

**IT IS FURTHER ORDERED** that Defendant Wyeth Pharmaceuticals Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint (Clerk's Doc. No. 28) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant Wyeth Pharmaceuticals Inc. are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's requests to amend (contained in Clerk's Doc. Nos. 30 and 57) are **DENIED.**

## REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

MARK LANE, UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LEE YEAKEL UNITED STATES DISTRICT JUDGE:

Before the court are Defendant Wyeth Pharmaceuticals Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. # 28); Plaintiff's Amended Memorandum In Response to Defendant Wyeth's Motion to Dismiss First Amended Complaint (Dkt. # 30); Defendant Wyeth Pharmaceuticals Inc.'s Reply Brief in Support of its Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. # 34). The Motion was referred by United States District Judge Lee Yeakel to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. After reviewing the pleadings, the relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

## I. BACKGROUND

Kyle Wells ("Wells"), the surviving daughter of Bobbye Jean Cooper ("Cooper"), brings this action individually and as the representative of Cooper's estate. First Amended Complaint ("FAC") (Dkt. # 27) at ¶ 1. Wells died from complications caused by being prescribed and taking amiodarone for non-life-threatening atrial fibrillation. FAC at ¶¶ 2–4. Although the FDA has approved amiodarone for other uses, the FDA has not approved amiodarone as a treatment for non-life-threatening atrial fibrillation. *Id.* at ¶ 4. Use of a prescription drug for a reason or manner other than its FDA approved use and manner is termed "off label." *Id.*

In 1985, Wyeth Pharmaceuticals, Inc. ("Wyeth") received FDA approval to market and sell amiodarone under the brand name Cordarone as a drug of last resort for patients suffering from documented recurrent life-threatening ventricular fibrillation and ventricular tachycardia when these conditions would not respond to other available anti-arrhythmic drugs and therapies. *Id.* at ¶¶ 44, 46. Wells alleges that Wyeth aggressively marketed amiodarone for off label uses never approved by FDA, including as a first line treatment of non-life-threatening atrial fibrillation. *Id.* at ¶ 47. Wells further alleges the off label marketing campaign over-played amiodarone's alleged off label benefits, downplayed the risks, misrepresented amiodarone's safety and efficacy for off label uses, and failed to warn medical professionals and patients of the dangers Wyeth knew were associated with the off label uses. *Id.* Amiodarone became a first line therapy for atrial fibrillation. *Id.*

In 2008, the FDA approved Zydus Pharmaceuticals (USA) Inc. ("Zydus") to manufacture, market, sell, and distribute generic formulations of amiodarone. *Id.* at ¶ 50. As with all generic bioequivalent approv-

als, the FDA required Zydus to provide patients prescribed the drug all FDA approved labels, warnings and medication guides with information exactly as required of the brand formulation manufacturer (Wyeth). *Id.*

Cooper was prescribed amiodarone for non-life-threatening atrial fibrillation. *Id.* at ¶ 54. She received and took generic amiodarone manufactured by Zydus. *Id.* at ¶ 60. In April of 2016, Cooper began to experience amiodarone toxicity. *Id.* at ¶ 68. Although she stopped taking the amiodarone, she could no longer care for herself and was moved into an assistive living facility, where she died. *Id.* at ¶¶ 3, 68.

Wells now sues Wyeth and Zydus and does not distinguish her claims against Wyeth from those against Zydus. Generally, the counts involve allegations that amiodarone was defectively designed, unsafe, and that Defendants misrepresented the drug and failed to warn of its dangers, causing Cooper's death. *Id.* at ¶¶ 135–166. Wells titles Count I as a claim for negligence and gross negligence and alleges that "Defendants owe a traditional Texas state law duty to design, test, manufacture, and market products" and that Defendants failed to adequately test, warn, market, and monitor amiodarone. *Id.* at ¶ 136, 139. In Count II, Wells asserts strict liability claims that Defendants failed to safely design, manufacture, and market amiodarone. *Id.* at ¶ 142. In Count III, Wells alleges Defendants breached an express warranty that "amiodarone was both safe and effective [for its] marketed uses." *Id.* at ¶ 145. In Count IV, Wells alleges Defendants committed fraud by "misrepresent[ing] directly and indirectly that the marketed off label uses were safe and effective despite their knowledge that they were not." *Id.* at ¶ 149. In Counts V and VI, Wells asserts claims for wrongful death and survival action. *Id.* at ¶¶ 150–66.

Wyeth moved to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(6) arguing that because Cooper never used Wyeth branded Cordarone, it has no liability in his death. Wells argues that because the amiodarone was prescribed off label and not for an FDA-approved use Wyeth is liable in Cooper's death.

## II. STANDARD OF REVIEW
### A. Motion to Dismiss

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555–57, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, 550 U.S. at 570, 127 S.Ct. 1955. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The standard is properly guided by "[t]wo working principles." *Id.* First, although "a court must 'accept as true all of the allegations contained in a complaint,'

that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678, 129 S.Ct. 1937. Second, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679, 129 S.Ct. 1937 (quoting FED. R. CIV. P. 8(a)(2)).

### B. Legal Framework for Branded and Generic Drugs

Before a manufacturer can market a new drug, the FDA must approve "that it is safe and effective and that the proposed label is accurate and adequate." *PLIVA, Inc. v. Mensing,* 564 U.S. 604, 612, 131 S.Ct. 2567, 180 L.Ed.2d 580 (2011); *Eckhardt v. Qualitest Pharm., Inc.,* 751 F.3d 674, 676 (5th Cir. 2014). In 1984, Congress modified these procedures for generic drug manufacturers, creating an expedited process for approving generic drugs through the Hatch–Waxman Amendments. *Eckhardt,* 751 F.3d at 676 (citing Drug Price Competition and Patent Term Restoration Act of 1984, Pub.L. 98–417, 98 Stat. 1585 (codified in scattered sections of 21 and 35 U.S.C.)). The Hatch–Waxman Amendments allow a generic drug manufacturer to piggy-back on the FDA approval of a brand name drug and greatly accelerate the approval process if the generic drug has identical active ingredients and labeling to that of the FDA-approved brand name drug. *Id.* (citing *Mensing,* 564

U.S. at 612 & n.2, 131 S.Ct. 2567). After the FDA approves the generic drug, the generic manufacturer is prohibited from making changes to the drug itself or from unilaterally changing the drug's label. *Id.*; *see also Mutual Pharmaceutical Co., Inc. v. Bartlett,* —— U.S. ——, 133 S.Ct. 2466, 2471, 186 L.Ed.2d 607, (2013). In *Mensing,* the Court held that "federal drug regulations applicable to generic drug manufacturers directly conflict with, and thus preempt, [ ] state-law claims." *Mensing,* 564 U.S. at 609, 131 S.Ct. 2567.

▮▮ The Fifth Circuit has twice recently examined a branded-drug manufacturer's potential liability when a patient ingests a generic equivalent drug. *See Eckhardt,* 751 F.3d at 674; *Lashley v. Pfizer, Inc.,* 750 F.3d 470 (5th Cir. 2014). In both cases, the Fifth Circuit held a plaintiff who has only taken a generic drug cannot bring products liability claims against the branded manufacturer. *Lashley,* 750 F.3d at 476–78; *Eckhardt,* 751 F.3d at 680. This is because Texas law shields companies from liability for products they did not create. *Lashley,* 750 F.3d at 476, 477; *see* TEX. CIV. PRAC. & REM. CODE § 82.001(2). Under Texas law, a products liability action includes "any action against a manufacturer or seller for recovery of damages arising out of personal injury ... allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories." *Lashley,* 750 F.3d at 477 (citing TEX. CIV. PRAC. & REM. CODE § 82.001(2)). Further, under Texas law, entities are " 'manufacturers ... only with respect to their own products.' " *Id.* (quoting *Owens & Minor, Inc. v. Ansell Healthcare Prods.,* Inc., 251 S.W.3d 481, 485 (Tex. 2008)). Moreover, a branded manufacturer has no common-law duty to a plaintiff that did not use

the branded manufacturer's product. *Id.* at 476.

■ Additionally, under Texas law, "a drug manufacturer enjoys a rebuttable presumption that it is not liable for failure to warn if the FDA has approved the warnings or information accompanying the product alleged to have harmed the plaintiff." *Id.* at 477–78 (citing *Lofton v. McNeil Consumer & Specialty Pharms.*, 672 F.3d 372, 374 (5th Cir. 2012)); TEX. CIV. PRAC. & REM. CODE § 82.007(a)(1)). The *Lashley* court rejected plaintiff's argument that the branded defendants lost this presumption of non-liability by committing fraud because the FDA had not made a finding of fraud. *Id.* at 478.

### III. ANALYSIS

#### A. Product Liability Claims

■ It is undisputed that Cooper only took generic amiodarone and never took the Wyeth branded Cordarone.[1] Compl. at ¶ 60. Under *Lashley* and *Eckhardt*, any claims against Wyeth based on "strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories" must fail because Wyeth did not manufacture the drugs taken by Cooper. *Lashley*, 750 F.3d at 477. This includes all of Wells's claims against Wyeth.[2]

Wells argues that because Cooper was prescribed amiodarone off label, this case is distinguishable from *Lashley* and *Eckhardt* and under *Centocor, Inc. v. Hamilton*, 372 S.W.3d 140 (Tex. 2012), Wyeth may be liable for Cooper's death.[3] This distinction of *Lashley* and *Eckhardt* is unwarranted. In both cases, the drug was taken by the plaintiff for substantially longer than the time period given in the FDA-approved warning. *Lashley*, 750 F.3d at 472; *Eckhardt*, 751 F.3d at 677. The FDA warning stated "[t]herapy with Reglan tablets should not exceed 12 weeks in duration." *Lashley*, 750 F.3d at 472. In *Lashley*, the plaintiff took the drug for over a year after the FDA approved the 12 week limitation. *Id.* In *Eckhardt*, the plaintiff took the drug for approximately one and half years. *Eckhardt*, 751 F.3d at 677. Like the situation here, the drug was used in a manner not endorsed by the FDA.

*Hamilton*, which issued after *Mensing* but before *Lashley* and *Eckhardt*, is also unavailing for Wells. In *Hamilton*, the Texas Supreme Court held that the learned intermediary doctrine applies to prescription drugs and "a prescription drug manufacturer fulfills its duty to warn end users of its product's risks by providing adequate warnings to the intermediaries who prescribe the drug and, once fulfilled, it has no further duty to

---

1. Wells does not allege that Cooper took Wyeth's drug or dispute this in her response brief.

2. This analysis includes Wells's fraud claim. In *Lashley*, the court noted that "[r]egardless of the specific form in which the argument is styled (negligence, fraud, deceptive trade practices), each charge is, at base, a failure-to-warn claim." *Lashley*, 750 F.3d at 474 n.7. Moreover, in an alternate analysis the court stated, " '[u]nder Texas law, a drug manufacturer enjoys a rebuttable presumption that it is not liable for failure to warn if the FDA has approved 'the warnings or information' accompanying the product alleged to have

harmed the plaintiff.' " *Id.* at 477 (*quoting Lofton v. McNeil Consumer & Specialty Pharms.*, 672 F.3d 372, 374 (5th Cir. 2012)); *see also* TEX. CIV. PRAC. & REM. CODE § 82.007. As there is no indication that the FDA itself has found fraud by Wyeth, Wells cannot rebut this presumption. *See Lofton*, 672 F.3d at 379–80; *see also Willis v. Schwarz–Pharma, Inc.*, 62 F.Supp.3d 560, 568 (E.D. Tex. 2014).

3. Wells also cites cases from outside of Texas and the Fifth Circuit to support her arguments. Those cases are not binding on this court and have no persuasive value in light of *Lashley* and *Eckhardt*.

warn the end users directly." *Hamilton*, 372 S.W.3d at 157. The court noted that "it is important to prohibit pharmaceutical manufacturers from disseminating grossly misleading advertising, and we note that Congress has enacted a comprehensive regulatory scheme, implemented by the FDA, which is meant to control the design, implementation, and marketing of prescription drugs, including both criminal and civil penalties for manufacturers that violate these regulations." *Id.* at 162 (citing 21 U.S.C. §§ 331, 333, 335b). *Hamilton* left open whether a "direct to consumer" exception would apply to the learned intermediary doctrine when "when a prescription drug manufacturer distributes intentionally misleading information directly to patients or prospective patients." *Id.* at 162.

However, *Hamilton* does not change the holdings in *Lashley* and *Eckhardt* that a branded manufacturer is not liable for product liability causes of action when the patient took a drug made by a company other than the branded manufacturer. In fact, the Texas Supreme Court had already issued *Hamilton* when the Fifth Circuit decided *Lashley* and *Eckhardt*. Moreover, Wells appears to be asking this court to apply a "direct to consumer" exception that the Texas Supreme Court did not yet recognize in *Hamilton*.

Accordingly, Wells has failed to state a viable claim against Wyeth. Wells contends the case should not be dismissed at the pleadings stage, but that additional facts should be developed to better analyze the duty issue. However, *Lashely* and *Eckhardt* make clear a branded drug manufacturer has no duty to a generic drug consumer. It is undisputed that Cooper did not take Wyeth's branded drug. Accordingly, as Wells's claims did not fail for lack of pleaded facts, allowing Wells to amend the claims will be futile.

## IV. RECOMMENDATIONS

For the reasons given above, the court **RECOMMENDS** that the District Court **GRANT** Defendant Wyeth Pharmaceuticals Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. # 28) and **DISMISS WITH PREJUDICE** the claims against Wyeth. The court further **RECOMMENDS** that Wells be **DENIED** leave to amend her claims against Wyeth.

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED December 16, 2016